**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

RICHARD A. BAIZE,

    *Plaintiff,*

  v.

AIR FORCE BOARD FOR CORRECTION
OF MILITARY RECORDS,

    *Defendant.*

Case No. 24-cv-183-ABA

**MEMORANDUM OPINION**

Plaintiff Richard A. Baize asserts a claim under the Administrative Procedures Act against the Air Force Board for Correction of Military Records ("AFBCMR" or the "Board"). Mr. Baize was discharged from the Air Force in 2002 with a "disability rating" (a percentage that approximates impairment of earning capacity) of 10 percent due to repeated, acute episodes of pain and anxiety. He contends that he should have received a higher disability rating, which would have resulted in discharge under a more favorable status than he received. Both parties have moved for summary judgment on the administrative record. Because the Board's decision not to alter Mr. Baize's disability rating was rational and applied the correct legal standards, the Court will enter judgment in favor of the Board.

## I.   BACKGROUND

Mr. Baize served in the Michigan Air National Guard and U.S. Air Force from 1971 to 2000. He was as an enlisted member for approximately the first fifteen years of his career, obtaining the rank of master sergeant. Administrative Record ("A.R.") 121,

429.[1] He then became a commissioned officer in 1986. A.R. 122, 429. He was promoted several times, and ultimately achieved the rank of major by the time of his discharge. A.R. 7, 122.

In his last years of service, Mr. Baize began experiencing numerous physical and psychological symptoms, including attacks that involved chest pain, shortness of breath, dizziness, and anxiety. *See* A.R. 96. It appears that these episodes were similar to panic attacks, though the medical and review board notes in the record are inconsistent on this point. *Compare* A.R. 148 ("The patient has continued to experience panic attacks[.]") *with* A.R. 96 ("Except lightheadedness, [Mr. Baize] has no symptoms of panic attacks during the episodes."). A Medical Evaluation Board ("MEB") examination from May 2000 indicated that the episodes occurred "2-3 times per week" but "occur[ed] more frequently during periods of stress," and lasted "2 to 8 hours." A.R. 96. Those notes from 2000 indicate that Mr. Baize was "afraid to leave his house, lest he have an attack, and frequently [was] unable to complete tasks such as grocery shopping or mowing the lawn without having an episode requiring that he lie down and rest." *Id.*

Mr. Baize was diagnosed with "Somatoform Disorder" in June 2000. A.R. 208–09. "A somatoform disorder is a 'psychosomatic' illness: one has physical symptoms, but there is no physical cause." *Baptist v. Kijakazi*, 74 F.4th 437, 440 n.2 (7th Cir. 2023) (quotations omitted). In other words, Mr. Baize genuinely experienced his symptoms, but his treating practitioners did not identify a physical source. A Physical Evaluation

---

[1] The parties submitted the administrative record as several attachments to ECF No. 54. The Court's A.R. citations refer to the page number in the lower right-hand corner, which runs continuously through all the attachments. Otherwise, citations to the page number of a filing refers to the ECF page number contained in the header, not necessarily the page number for the document itself.

Board ("PEB"), the Air Force entity that conducts initial disability ratings evaluations, assigned Mr. Baize a 30 percent disability rating and placed him on the Temporary Disability Retired List ("TDRL") in June 2000. A.R. 102. "[C]urrent service members are placed on the [TDRL] when they would qualify for military retirement but for the fact that their disabilities are not determined to be 'of a permanent nature and stable.'" *Coleman v. Kendall*, 74 F.4th 610, 617 (4th Cir. 2023) (quoting 10 U.S.C. § 1202). Service members on the TDRL are examined at least once every eighteen months to determine whether there has been a change in their condition sufficient to alter their temporary retirement status (either through reintroduction to active service or permanent discharge). *See id.*; 10 U.S.C. §§ 1203, 1211. The PEB's decision cited the Veterans Affairs Schedule for Rating Disabilities ("VASRD")—a framework used both by the military and the Department of Veterans' Affairs. A.R. 102; *see also* 10 U.S.C. § 1201(b)(3)(B).

Mr. Baize subsequently underwent two additional examinations in 2002 that are relevant to this case. First, in March 2002, an Air Force physician conducted an examination for purposes of re-evaluating Mr. Baize's TDRL status. A.R. 148–50. The exam notes state that Mr. Baize had "not received any further psychiatric treatment" and "not tak[en] any psychiatric medications" since his previous evaluation in 2000, and that his "Somatoform Disorder ha[d] not improved." A.R. 148, 150. The notes further state that Mr. Baize's attacks last "15–20 minutes and commonly occur when in a crowd or driving." A.R. 148. Based upon this exam, an "informal" Physical Evaluation Board evaluation reduced Mr. Baize's disability rating to 10 percent. A.R. 99–100; *see also Thompson v. Austin*, Case No. 23-cv-2458-DKC, 2024 WL 4215726, at *2 (D. Md. Sept. 17, 2024) ("The informal PEB's findings become finalized if a service member fails

3

or refuses to make an election or submit a rebuttal within the specified time limit."). Mr. Baize contested this reduction before a formal PEB and testified at a hearing. *See* A.R. 100 (summary of testimony; the transcript is not in the record). But his challenge was unsuccessful and the decreased rating went into effect. A.R. 99–100. Because temporary disability retirement is only available for service members with 30 percent ratings or higher, Mr. Baize was removed from the TDRL in November 2002, effective as of December 10, 2002. A.R. 505. His removal from the TDRL meant that he no longer received continuing monthly benefits, and instead was discharged with a one-time disability severance payment. A.R. 103, 505.

As a veteran, Mr. Baize was (and remains) eligible for medical treatment and other services from the Department of Veterans' Affairs ("VA"). He applied for veterans' benefits and, in December 2002, a VA physician examined him to assign a disability rating. A.R. 155–57. The examining physician noted that Mr. Baize was continuing to have attacks at "various frequencies," and that he had visited the emergency room on one occasion. A.R. 156; *see also* A.R. 151–53 (ER physician's notes). The notes also state that Mr. Baize was spending his time "performing home maintenance duties, compiling resumes on his computer, reading, attending movies, and doing some snow plowing," and that he had spent approximately ten days that year working as a substitute teacher. A.R. 156. The notes do not mention any ongoing psychiatric care. The VA physician performed a "global assessment of function" ("GAF") test and assigned Mr. Baize a score of 45, which "indicate[d] serious symptoms or serious impairment in social, occupational[,] or school functioning." A.R. 110, 157. Based upon this exam and the GAF score, in January 2003 a VA rating office assigned Mr. Baize a disability rating of 50 percent. A.R. 109–11. This VA rating in January 2003 (50 percent) was substantially

4

higher than the rating that the Air Force had assigned him in November 2002 (10 percent).

Nearly two decades went by. Then, in 2018, Mr. Baize decided to challenge the Air Force's decision back in November 2002 to reduce his rating to 10 percent and remove him from the TDRL. He filed an application to the Physical Disability Board of Review ("PDBR"). A.R. 160–61. The PDBR denied that application on February 7, 2021. A.R. 516–519. On January 19, 2024, Mr. Baize filed the instant lawsuit, challenging the PDBR's denial. ECF No. 1. The PDBR then "was disbanded and replaced by the [AFBCMR]." ECF No. 25 at 1 n.1. Upon the parties' joint motion, this Court stayed the case and remanded Mr. Baize's application to the AFBCMR. ECF No. 26.

The AFBCMR denied Mr. Baize's application in June 2025. A.R. 6–21. The AFBCMR's decision largely relied upon the report of a psychological advisor (the "advisor"). A.R. 520–37. The advisor concluded that the ten percent rating at the time Mr. Baize was removed from the TDRL in 2002 was appropriate. To reach this conclusion, the advisor reviewed Mr. Baize's medical and military records, as well as various statements he had made during the course of his applications for benefits. The advisor emphasized the VA examination that occurred in December 2002. During that examination, the advisor concluded, Mr. Baize reported less frequent episodes than he had reported in his earlier examinations, and told the physician that he was "able to leave the house to work as a substitute teacher" and perform recreational and household activities. A.R. 535. The advisor also noted that, in the March 2002 TDRL re-evaluation, Mr. Baize had noted attacks of significantly shorter length (15 to 20 minutes), down from 2 to 8 hours as previously reported. *Id.* The advisor reasoned that these statements showed "noticeable improvements in [Mr. Baize's] functioning" when compared to the

examinations that took place when he first was placed on the TDRL. *Id.* As discussed above, Mr. Baize's May 2000 exam—two and a half years before his discharge—had noted debilitating attacks that occurred multiple times a week of several hours in length that left Mr. Baize fearful of leaving his home. A.R. 96, 535. Given that Mr. Baize was apparently able to leave his house more regularly as of the March 2002 and December 2002 exams even without further psychiatric treatment, the psychological advisor thus determined that the progression of examination notes showed clear improvement.

In addition to contrasting the VA examination with earlier examinations, the advisor considered the symptoms as reported in the VA examination itself and concluded that they best matched the 10 percent rating under VASRD. That VASRD level corresponds with "Occupational and social impairments due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks" that occur "only during periods of significant stress, or symptoms controlled by continuous medication." A.R. 536; *see also* 38 C.F.R. § 4.130. The psychological advisor concluded that Mr. Baize's symptoms were at the 10 percent level as of the December 2002 VA exam because there was "no evidence he had any decreased work efficiency." A.R. 536. Further, Mr. Baize reported at his VA examination that he was not currently undergoing mental health treatment or taking medication. The advisor thus concluded that "it appeared he was able to control" his symptoms "because he did not need or was not receiving any type of mental health intervention for assistance." A.R. 536.

The advisor acknowledged that the VA had assigned a rating of 50 percent based on that December 2002 exam, but concluded that the VA's decision was "contradictory and inconsistent with the results presented" in the exam in numerous ways. *Id.* at 534. Contrary to the VA's decision, the advisor concluded that Mr. Baize did not present most

6

of the symptoms associated with the VASRD's 50 percent threshold such as "flattened affect" and "difficulty in understanding complex commands." A.R. 534.

The advisor specifically addressed whether, even if 50 percent was unsupported, a rating of 30 percent as of the discharge date (December 2002) would have been appropriate. *See* 38 C.F.R. § 4.130 (defining the 30 percent rating as for "[o]ccupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events)"). The advisor concluded that the contemporaneous record did not support a 30 percent rating either, based principally on various areas of "noticeable improvement in his functioning." A.R. 535. The advisor further addressed the GAF score of 45 that the VA physician had assigned, concluding that it was "not consistent" with the notes of the examination themselves, which did not display "serious symptoms" such as "suicidal ideation, severe obsessional rituals, frequent shoplifting" or "serious impairments" in Mr. Baize's functioning. A.R. 535.

The psychological advisor concluded the report as follows:

> This psychological advisor has performed an exhaustive review of the available records and finds insufficient evidence to support the applicant's request to increase his disability rating for Somatoform Disorder. There is no error or injustice identified with his 10% rating. His 10% rating closely resembles his overall functioning and the severity of his condition and symptoms by the time he was removed from the TDRL. Therefore, this psychological advisor recommends his disability rating remain unchanged at 10% for Somatoform Disorder (or Somatization Disorder), VASRD Code 9421.

A.R. 537.

The AFBCMR reviewed the psychological advisor's report and largely adopted it. The AFBCMR determined, as the advisor did, that Mr. Baize should not have initially been reduced to 10 percent following the PEB re-examination in March 2002. A.R. 19. But regardless, the AFBCMR reasoned that it was not ultimately error for him to be reduced to 10 percent in light of the VA examination that also occurred in 2002 and that showed improvement in his symptoms such that they were consistent with the 10 percent level. A.R. 20.

Following the AFBCMR denial, Mr. Baize amended his complaint to substitute the AFBCMR as the defendant and challenge its decision instead. ECF No. 48. The parties both filed cross-motions for summary judgment on the administrative record. ECF Nos. 55, 58. Those motions are fully briefed, and this Court held a hearing on July 16, 2026. ECF No. 65.

## II.   LEGAL STANDARD

"Decisions of the AFBCMR are final agency actions subject to judicial review under the Administrative Procedure Act." *Hoffler v. Mattis*, 677 F. App'x 119, 120 (4th Cir. 2017). "In a case involving review of a final agency action under the APA, . . . the standard set forth in Rule 56(a) does not apply because of the limited role of a court in reviewing the administrative record." *Ctr. for Sci. in the Pub. Int. v. Perdue*, 438 F. Supp. 3d 546, 556 (D. Md. 2020). Instead, "[t]he APA confines judicial review of executive branch decisions to the administrative record of proceedings before the pertinent agency[.]" *Harrison v. Kendall*, 670 F. Supp. 3d 280, 299 (E.D. Va. 2023) (quotations omitted).

"The Board's decisions can only be set aside . . . if they are arbitrary, capricious, not based on substantial evidence, or not in accordance with law." *Hoffler*, 677 F. App'x at 120. "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citation and internal quotation marks omitted). Regarding whether an agency acts contrary to law, "courts, not agencies, will decide '*all* relevant questions of law' arising on review of agency action . . . and set aside any such action inconsistent with the law as they interpret it." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) (quoting 5 U.S.C. § 706).

Mr. Baize's central contention is that the Board's decision was arbitrary and capricious. When determining whether an agency decision was arbitrary and capricious, "the Court examines the administrative record and determines 'whether the agency considered the relevant factors and whether a clear error of judgment was made.'" *Harrison*, 670 F. Supp. 3d at 299 (quoting *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009)). "Agency action is arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Appalachian Voices v. United States Dep't of Interior*, 25 F.4th 259, 269 (4th Cir. 2022) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "[S]o long as the agency provides an explanation of its decision that

9

includes a rational connection between the facts found and the choice made, its decision should be sustained." *Coleman*, 74 F.4th at 619 (quotations and alterations omitted).

Though the arbitrary and capricious standard already reflects deference to the agency, several courts have applied additional deference to decisions of military boards of correction. *See Harrison*, 670 F. Supp. 3d at 299 ("Challenges to the [AFBCMR's] decisions are considered under an unusually deferential application of the arbitrary or capricious standard of the APA to ensure that courts function neither as a super correction board, nor as a forum for appeals by every soldier dissatisfied with a military personnel action or decision, a result that would destabilize military command and take the judiciary far afield of its area of competence.") (cleaned up). The parties disagree regarding precisely how much, if any, "extra" deference applies here. In *Dorado-Ocasio v. Averill*, the Fourth Circuit held that "review of military board judgments is exceptionally deferential." 128 F.4th 513, 520 (4th Cir. 2025) (quotations omitted). The *Dorado-Ocasio* court based this standard in part on the need to "preserve respect for the chain of command" and avoid "risk of hindrance to military discipline." 128 F.4th at 522. Mr. Baize contends that his case is different, because "the need for a heightened standard applies to performance reviews and promotion decisions of active personnel but not to compensation of veterans no longer in the military." ECF No. 58-1 at 16. He cites a D.C. Circuit case, *Sissel v. Wormuth*, to support this proposition. 77 F.4th 941, 946–47 (D.C. Cir. 2023) ("Contrary to the Secretary's contention, our reliance on ordinary arbitrary-and-capricious review should not threaten to 'destabilize military command and take the judiciary far afield of its area of competence.'") (quoting *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)). The *Sissel* court noted, however, that "even ordinary arbitrary-and-capricious review is 'highly deferential' and 'presumes the

validity of agency action.'" *Id.* at 147 (quoting *AT&T Corp. v. FCC*, 220 F.3d 607, 616 (D.C. Cir. 2000)).

This Court need not, and does not, resolve the legal question of whether to apply extra deference to the AFBCMR's decisions regarding *inactive* personnel because, for the reasons articulated below, Mr. Baize's claims fail under the ordinary arbitrary and capricious standard.

## III.    DISCUSSION

Mr. Baize contends that the Board's decision was arbitrary and capricious, not based upon substantial evidence, and contrary to law. He provides several specific arguments to support these conclusions. Before reaching Plaintiff's specific issues, however, the Court will apply the standards outlined above to analyze the Board's reasoning generally.

The Board primarily relied upon the opinion of its psychological advisor, agreeing with the opinion's "rationale and recommendation." A.R. 19. The Board generally may rely upon and/or adopt an expert opinion in this fashion, but may not do so if the opinion is inconsistent, illogical, or fails to account for contrary evidence in the record. *See Jeanpierre v. United States*, 176 Fed. Cl. 11, 33 (2025) (finding a medical board decision arbitrary and capricious in part because it did "not address the fact that in several instances the advisory opinions conflict with the contemporaneous medical treatment notes in the record"); *Cumbie v. Meink*, Case No. 8:24-CV-2505-CDA, 2025 WL 2772004, *14 (D. Md. Sept. 26, 2025) ("[T]he AFBCMR must consider credible evidence *and* weigh the advisory opinions against the evidence—especially where, as here, a servicemember advances evidence in direct conflict with the AFBCMR's (and the advisory opinion's) conclusion.")

The advisory opinion that the Board adopted here considered the entire record and rationally connected the facts to a conclusion under the legally correct framework. As discussed above, the opinion discussed multiple medical records and statements by Mr. Baize, and ultimately placed the most weight upon the VA examination in December 2002, which provided information regarding his condition at approximately the time he was discharged (November 2002). The opinion explained why the VA exam showed Mr. Baize's "symptoms and functioning best resemble the criteria of a 10% rating" under the VASRD, explaining that his attack symptoms as reported during the VA exam appeared to be sufficiently improved that he could leave his house and work. A.R. 536. The VASRD is the legally correct ratings framework to apply. 10 U.S.C. § 1201(b)(3)(B) (requiring the Air Force to evaluate disability-related separation under the VA's framework). And the advisor did not ignore the VA's contrary rating determination or the examination from 2000 that had indicated a worse condition. Instead, the advisor explained directly why the advisor disagreed with the VA's rating and why the later, 2002 examinations showed improvement in Mr. Baize's condition that had occurred even despite Mr. Baize not receiving any mental health treatment. *See Adams v. United States Dep't of Lab.*, 360 F. Supp. 3d 320, 343 (D.S.C. 2018) ("While an agency is not required to address all of the contrary evidence before it, it must 'grapple with contrary evidence' in a meaningful way.") (quoting *Fred Meyer Stores, Inc. v. Nat'l Labor Relations Bd.*, 865 F.3d 630, 638 (D.C. Cir. 2017)).

Regardless of whether this Court would have reached the same conclusion if confronted with the same record in the first instance, the advisor's opinion and the resulting Board decision that relied upon it were not "counter to the evidence" or "so implausible that it could not be ascribed to a difference in view or the product of agency

12

expertise"—and thus were not arbitrary and capricious. *Appalachian Voices*, 25 F.4th at 269; *see also Ohio Valley*, 556 F.3d at 192 ("The court is not empowered to substitute its judgment for that of the agency.") (quotations omitted). The advisory opinion and Board decision provided a "rational connection between the facts found and the choice made" and thus their "decision[s] should be sustained." *Coleman*, 74 F.4th at 619. The decision was also based upon substantial evidence; it was reasonable to emphasize the relevant evidence of the December 2002 VA examination that occurred shortly after Mr. Baize's removal from the TDRL and showed improvement in symptoms. *See Pearson*, 810 F.3d at 207 (4th Cir. 2015) ("Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion."). And finally, the decision was not contrary to law, as it considered the factors and framework dictated by statute and regulation, namely the VASRD. 10 U.S.C. § 1201(b)(3)(B).

Mr. Baize's specific alleged deficiencies in the Board's analysis do not render the Board's decision arbitrary and capricious.

Mr. Baize first attacks the Board's emphasis on his "improvement" between the initial TDRL evaluation and rating, which placed him at 30 percent in June 2000, and his VA examination in December 2002. He contends that the Board erred by failing to evaluate "whether the initial disability rating assigned when [he] was placed on the TDRL was legally correct." ECF No. 58-1 at 21. Mr. Baize further argues that the Board's conclusions regarding his improvement between 2000 and 2002 are speculative and contradicted by the record because (1) the Board's inference that Mr. Baize's lack of treatment indicated mildness in symptoms was speculative; (2) the Board improperly found that the December 2002 VA exam "superseded" the earlier medical evidence; and

(3) the Board "cherry-picked" by ignoring contrary evidence, particularly Mr. Baize's GAF score of 45 and VA rating of 50 percent. *Id.* at 17–22.

These arguments miss a core aspect of the advisory opinion's reasoning: that the December 2002 VA examination indicates symptoms more consistent with a 10 percent rating, independently of Mr. Baize's prior exams. As explained above, the advisor emphasized that the VA exam is the best evidence of Mr. Baize's condition at the time of his removal from the TDRL, as it was nearly contemporaneous with the removal. A.R. 535–36. Thus, even if the Board did not analyze the sufficiency of the original 30 percent rating, it rationally concluded that Mr. Baize's symptoms were more appropriately categorized at the 10 percent level as of his later exams in 2002. This determination was informed by the fact that Mr. Baize's condition had appeared to improve—as it should have been, since the Board is required to conduct a holistic assessment—but the advisor nonetheless independently concluded that the VA exam in the context of the record as a whole properly reflected a 10 percent rating. *See* A.R. 536 (quoting the 10 percent VASRD level and explaining why Mr. Baize's "disability nearly approximates the 10% rating").

Further, the advisor's reasoning was not so speculative or directly contradicted by the record as to render the conclusion arbitrary and capricious. Contrary to Mr. Baize's contention, the advisor did not overly rely upon the fact that he had not sought psychiatric treatment between 2000 and 2002, as he reported in his 2002 exams. *See* A.R. 148. The advisor noted that the lack of treatment was "a concern, but it is not the only concern being considered" and proceeded to primarily reason that the 10 percent level was justified by Mr. Baize's symptoms as displayed in the December 2002 VA exam, regardless of whether he had previously sought treatment. A.R. 533. It was also

14

not improper for the Board to emphasize the December 2002 VA exam. Though Mr. Baize is correct that the Board must consider the record holistically, *see* 38 C.F.R. § 4.126(a), the advisor did just that, by examining all of the relevant medical records and noting the improvement in symptoms and ability to perform the activities of daily life that the 2002 VA exam indicated in comparison to the earlier exams. And finally, the Board did not "disregard" the GAF score or the VA's 50 percent rating. Instead, as described above, the advisory opinion that was adopted by the Board addressed these contrary pieces of evidence directly. *See* A.R. 535–36.

Mr. Baize next contends that the Board violated 38 C.F.R. § 4.130, the regulation containing the disability rating schedule. He contends that the Board erred by "emphasizing Mr. Baize's ability to perform certain daily activities" as evidence that his symptoms were mild or transient. ECF No. 58-1 at 28. But Mr. Baize's point is belied by the language of the regulation itself. The ten percent category is marked by "Occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to *perform occupational tasks* only during periods of significant stress, or symptoms controlled by continuous medication." 38 C.F.R. § 4.130 (emphasis added). The advisor thus properly analyzed the extent to which Mr. Baize's symptoms interfered with his ability to "perform occupational tasks" to help determine the appropriate disability rating level. *See* A.R. 536.

Mr. Baize next contends that the Board did not "apply the same governing review standards that would have applied to the PDBR" because it did not "give 'particular consideration' to disability ratings assigned by the [VA]" and failed to apply the VASRD framework. ECF No. 58-1 at 29 (quoting Department of Defense Instruction 6040.44). But this mischaracterizes the Board's review. As outlined above, both the Board and the

advisory opinion *did* apply the VASRD framework to reach its 10 percent rating conclusion. *See* A.R. 536 (quoting the 10 percent VASRD category). The advisor gave significant consideration to the VA rating, explaining in detail why the VA rating was inconsistent with the actual notes of the VA exam. *See id.* at 534. And as Mr. Baize "does not dispute," the VA's rating is not binding upon the Board. ECF No. 58-1 at 32; *see also Coleman*, 74 F.4th at 613 ("VA disability ratings and associated benefits are distinct from the Air Force's. The VA separately assesses a service member and may determine a disability rating that varies from the Air Force's rating.").

## IV.    CONCLUSION

For these reasons, the Court will grant the Board's motion, deny Mr. Baize's motion, and enter judgment in favor of the Board and against Mr. Baize. A separate order follows.


Date:  August 3, 2026                           _____/s/_____
                                                Adam B. Abelson
                                                United States District Judge

16